**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ARMADA CONCRETE, LLC, | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.: 2:14-cv-02176-GMN-GWF |
| | ) |
| JAYNES CORPORATION; WESTERN SURETY COMPANY, | ) **ORDER** |
| | ) |
| Defendants. | ) |
| | ) |
| JAYNES CORPORATION, | ) |
| Third-Party Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| LIBERTY MUTUAL INSURANCE COMPANY, | ) |
| Third-Party Defendant. | ) |
| | ) |
| JAYNES CORPORATION, | ) |
| Counter Claimant, | ) |
| | ) |
| vs. | ) |
| | ) |
| ARMADA CONCRETE, LLC, | ) |
| Counter Defendant. | ) |

Pending before the Court is the Motion for Relief from Judgment, (ECF No. 146), filed by Plaintiff Armada Concrete, LLC, and Third-Party Defendant Liberty Mutual Insurance Company ("Liberty Mutual")[1] (collectively "Armada"). Defendants Jaynes Corporation and

---

[1] Liberty Mutual is Armada's bonding company. (*See* Order 2:1 n.1, ECF No. 143).

Western Surety Company ("WSC")[2] (collectively "Jaynes") filed a Response, (ECF No. 151), and Armada filed a Reply, (ECF No. 153).

Also pending before the Court is the Motion to Amend Judgment, (ECF No. 148), filed by Armada. Jaynes filed a Response, (ECF No. 152), and Armada filed a Reply, (ECF No. 154). For the reasons discussed herein, Armada's Motion for Relief is **GRANTED in part** and **DENIED in part**, and Armada's Motion to Amend is **DENIED**.

## I.   BACKGROUND

The instant Motions arise from the Court's bench trial that concerned a contract dispute between Armada and Jaynes. Specifically, Armada filed its Complaint on December 22, 2014, asserting the following causes of action against Jaynes: (1) recovery on its Miller Act bond; (2) breach of contract; (3) breach of the implied covenant of good faith and fair dealing; and (4) unjust enrichment. (Compl. ¶¶ 17–47, ECF No. 1). On January 30, 2015, Jaynes filed a Third-Party Complaint, (ECF No. 10), against Liberty Mutual for payment on its bond. That same day, Jaynes filed its Counterclaim, (ECF No. 11), against Armada asserting the following claims: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; and (3) payment on the bond. (*Id.* ¶¶ 5–27).

On May 15, 2017, the Court began a ten-day bench trial, which concluded on June 9, 2017, (*see* ECF Nos. 115–19, 121–23, 135–36). On August 17, 2017, the Court issued its Findings of Fact and Conclusions of Law where it found the following. (ECF No. 143).[3] In June 2011, the United States Army Corps of Engineers (the "Corps") issued a Solicitation, Offer, and Award to Jaynes as the design build contractor for construction of the Fire Crash Rescue Station at Creech Air Force Base (the "Project"). (*Id.* 2:15–18). On September 5, 2012,

---

[2] WSC is Jaynes' bonding company. (*See* Order 2:2 n.2)

[3] A more complete description of the events can be found in the Court's Findings of Fact and Conclusions of Law and will not be fully repeated here. (*See* Order 2:14–19:23).

Armada submitted a proposal to Jaynes to complete concrete installations for the Project. (*Id.* 3:1–2). Jaynes and Armada entered into an agreement (the "Subcontract"), which incorporated other documents that provided the terms of the parties' agreement (the "Contract Documents"). (*Id.* 3:15–19, 4:7–11). Pursuant to the Subcontract, Armada agreed to install slab-on-grade in Area A and Area B of the Project, to provide sloped slab, to furnish the layout and equipment as necessary to complete the saw cutting of the required control joints, and to place Type II for the building slab following the laying of underground utilities by other subcontractors on the Project. (*Id.* 3:20–25).

Under the parties' agreement, Armada was to commence work on October 8, 2012, and complete its work by approximately March 21, 2013. (*Id.* 3:15–4:25). Due to delays Jaynes suffered unrelated to Armada's performance, Armada was not able to begin work until November 5, 2012. (*Id.* 5:1–4). Jaynes directed Armada to establish a cold weather plan and lighting plan so that Armada could work during the colder weather and shorter-day lengths. (*Id.* 5:15–23). Jaynes further ordered Armada to re-sequence its work and perform in an accelerated manner. (*Id.* 6:23–25). Due to having to work during the colder weather and Jaynes' re-sequencing directive, Armada incurred increased costs that were not anticipated under the parties' Subcontract and Contract Documents. (*Id.* 5:23–25, 6:23–25). In light of these costs, Armada provided timely notice of its delay and impact damages to Jaynes under the Subcontract and retained SDC & Associates ("SDC"), a construction claims firm, to tabulate Armada's itemized damages. (*Id.* 6:11–14).

On February 14, 2013, Jaynes advised Armada that the placement of the Area B slab would be delayed to allow Jaynes's masonry subcontractor to accelerate its work. (*Id.* 7:14–16). As a consequence of the masonry subcontractor's out-of-sequence installation of a wall surrounding Area B, Armada's work on this slab became much more difficult. (*Id.* 7:21–24). Pursuant to the Contract Documents, Armada was required to saw cut within the same day that

1   Armada poured the slab-on-grade. (*Id.* 8:5–7).  Armada placed the slab-on-grade on March 14,

2   2013, and performed the saw cutting on March 15, 2013. (*Id.* 8:23–25).  When Jaynes arrived

3   on-site the morning of March 15, 2013, numerous cracks had already formed on the slab-on-

4   grade prior to Armada's saw cutting. (*Id.* 10:1–5).  The Corps rejected Armada's work on Area

5   B and directed Jaynes to remove and replace the slab-on-grade. (*Id.* 10:19–20, 11:3–4).  Jaynes

6   notified Armada it was in breach of the Subcontract because its work was deemed defective by

7   the Corps, and Jaynes instructed Armada to remove and replace the Area B slab-on-grade at its

8   own expense. (*Id.* 11:8–12).  Armada refused to do this, asserting that the issues with the Area

9   B slab-on-grade were the result of Jaynes's directive to deviate from the original plan. (*Id.*

10  11:11–12, 11:15–18).  Jaynes retained a new subcontractor to remove and replace Armada's

11  rejected slab. (*Id.* 11:19–20).

12      At the end of the trial, the Court concluded that both Armada and Jaynes breached the

13  Subcontract. (*Id.* 20:1–8).  Specifically, the Court ordered that judgment be entered against

14  Jaynes and in favor of Armada on Armada's claims for recovery on the bond, breach of

15  contract, and breach of the implied covenant of good faith and fair dealing. (*Id.* 20:1–4).  The

16  Court further ordered that judgment be entered against Armada and in favor of Jaynes on

17  Jaynes's counterclaim for recovery on the bond, breach of contract, and breach of the implied

18  covenant of good faith and fair dealing. (*Id.* 20:5–8).

19      With respect to Armada's damages, the Court concluded that Jaynes caused 188 days of

20  delay to Armada's work on the Project. (*Id.* 15:18–20).  Relevant to the instant Motions, the

21  Court awarded Armada the following relief: $3,530.00 in costs incurred due to additional

22  equipment rentals; $9,665.05 in cold weather protection costs; and $31,251.28 in additional

23  labor costs due to cold weather protection. (*Id.* 16:3–17).  The Court further found that Armada

24  incurred $104,835.00 in costs paid to SDC to compile its damages, but Armada was not entitled

25  to this total in light of the actual costs incurred due to the delays. (*Id.* 16:18–23).  Instead, the

Court applied a 20% fee to the costs for added concrete placements in Area A, materials and equipment used due to cold weather, cold weather and out-of-sequence work inefficiencies, and extended field overhead costs. (*Id.* 16:23–17:2). This added up to $22,845.71. (*Id.*). Further, in light of the 188-day delay for which the Court found Armada was not at fault, the Court concluded that Armada was entitled to $31,034.90 in field supervision costs and additional equipment costs at a rate of $206.10 per day. (*Id.* 17:3–8). This added up to $38,746.80, over the 188-day period. (*Id.* 17:6–8). Pursuant to the express terms of the Subcontract, the Court also found that "Armada is entitled to 10% overheard and 5% profit on all additional cost and expenses incurred as a consequence of the delay and disruption it suffered from Jaynes' actions or inactions." (*Id.* 17:12–16). The Court concluded that "Armada is entitled to these amounts applied to the costs for added concrete placements in Area A, materials and equipment used due to cold weather, and cold weather and out-of-sequence work inefficiencies, amounting to $1,318.86 of overhead and $2,222.34 of profit." (*Id.* 17:16–20).

Moreover, the Court found that Armada's failure to timely saw cut the Area B slab-on-grade caused cracks that were unacceptable to the Corps and inconsistent with outside industry standards. (*Id.* 18:7–10). The Court determined that the Corps was justified under the Contract Documents to reject the slab and require its removal and replacement. (*Id.* 18:17–18). Accordingly, the Court found that Armada breached the duty of good faith and fair dealing by "failing to perform pursuant to the Subcontract and Contract Documents, failing to install a compliant and acceptable slab-on-grade in Area B, and failing to remove and replace the deficient slab in Area B." (*Id.* 18:24–19:2). In light of this conclusion, the Court awarded Jaynes $287,999.17 in damages for the cost incurred to remove and replace the slab-on-grade in Area B. (*Id.* 19:11–12). Because of this judgment, Armada filed the instant Motions on September 14, 2017. (*See* Mot. for Relief, ECF No. 146); (Mot. to Am., ECF No. 148).

## II.  MOTION FOR RELIEF FROM JUDGMENT

### A. Legal Standard

Under Federal Rule of Civil Procedure 60(a), "[t]he court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. P. 60(a).  "In determining whether a mistake may be corrected under Rule 60(a), our circuit focuses on what the court originally intended to do." *Tattersalls, Ltd. v. DeHaven*, 745 F.3d 1294, 1297 (9th Cir. 2014) (internal citation and quotation marks omitted).  "The basic distinction between 'clerical mistakes' and mistakes that cannot be corrected pursuant to Rule 60(a) is that the former consist of 'blunders in execution' whereas the latter consist of instances where the court changes its mind." *Id.* (quoting *Blanton v. Anzalone*, 813 F.2d 1574, 1577 n.2 (9th Cir. 1987)).

### B. Discussion

In its Motion for Relief, Armada argues that the Court's Order on its Findings of Fact and Conclusions of Law contains three clerical mistakes that should be corrected to accurately reflect the Court's award to Armada. (Mot. for Relief 7:2–3, ECF No. 146).  Armada asserts that the Court erred with the following:  Conclusion of Law No. 22, relating to Armada's overhead cost and profit calculation; Conclusion of Law No. 21, pertaining to Armada's extended equipment costs; and Conclusion of Law No. 20, regarding Armada's costs for retaining SDC to calculate its damages. (*Id.* 2:3–10).  The Court will address each alleged error in turn.

#### i. Conclusion of Law No. 22

Armada argues that the "dollar value contained in Conclusion of Law No. 22 does not accurately state the applicable percentage calculation the Court describes." (*Id.* 7:6–7).  Specifically, Armada states that because the Court awarded it $114,228.03 in damages caused by Jaynes, Armada is entitled to 10% overhead and 5% profit based on that dollar amount,

1  which accounts for field supervision and additional equipment costs for the 188-day delay. (*Id.*

2  7:8–11). Jaynes responds that the Court's calculation of damages is supported by the record

3  and that the Court explicitly found Armada was entitled to overhead and costs for only three

4  discrete categories of damages "which total $44,446.33, not $114,228.03 as Armada contends."

5  (Resp. 7:27–8:2, ECF No. 151).

6      The Court agrees with Armada that Conclusion of Law No. 22 was intended to include

7  extended field supervision and additional equipment costs. The Court explicitly stated that

8  Armada was entitled to overhead and profit on "*all* additional cost and expenses incurred as a

9  consequence of the delay and disruption it suffered from Jaynes' actions or inactions." (Order

10  17:12–16) (emphasis added). In the preceding Conclusion of Law, the Court awarded damages

11  to Armada for field supervision and additional equipment costs for the 188-day delay period,

12  for which the Court explicitly found "Armada was not at fault." (*Id.* 17:3–5). The Court further

13  awarded Armada damages for costs it incurred for hiring SDC, which factored in 20% of field

14  supervision and additional equipment costs. (*Id.* 16:23–17:2). If the Court deliberately omitted

15  extended field supervision and equipment costs because, as Jaynes argues, "Armada should not

16  profit from delay for which it is partially responsible," (Resp. 8:4–7), this would be inconsistent

17  with the Court's underlying award of damages to Armada in this category.

18      The Court hereby corrects Conclusion of Law No. 22 to include overhead and profit for

19  extended field supervision and additional equipment costs. Specifically, Armada is entitled to

20  10% overhead and 5% profit for added concrete placements in Area A, materials and

21  equipment due to cold weather, cold weather and out-of-sequence work inefficiencies, and

22  extended field overhead costs. The costs for these items, respectively, are $3,530.00;

23  $9,665.05; $31,251.28; and $69,781.70, amounting to $114,228.03. Therefore, Armada's

24  award for 10% overhead and 5% profit is corrected to be $11,422.80, and $5,711.40,

25

respectively.  Accordingly, Armada's Motion for Relief, as it relates to Conclusion of Law No. 22, is granted.

### ii. Conclusion of Law No. 21

Next, Armada argues that the Court erred with respect to the number of days Armada was required to maintain equipment at the Project site. (Mot. for Relief 7:13–9:4); (*see* Order 17:3–5).  According to Armada, "[t]here is nothing in the trial record supporting the statement in Conclusion of Law No. 21 that the extended equipment duration is 188 calendar days." (*Id.* 8:7–9).  Jaynes responds that the Court considered Armada's evidence that the total delay duration was 329 days and deliberately decided that Armada was only entitled to equipment costs for 188 days. (Resp. 5:11–22, ECF No. 151).  In support of its argument, Jaynes asserts that the trial record provides a clear basis for a finding that Armada's "equipment should have been removed, Armada failed to mitigate its damages, and leaving the very limited amount of small items on site was unreasonable." (*Id.* 5:18–22).

The Court finds no clerical error in its conclusion concerning the number of delay days for which Armada was entitled to equipment costs.  While Armada presented evidence of 329 days of delay, (*see* Trial Tr. Eiman 78:25–79:3, ECF No. 133), Jaynes presented contrary evidence and argument that Armada was not entitled to damages for the time period for which the equipment was not being utilized. (*See, e.g.*, *id.* 164:14–172:7); (Trial Tr. Gundrum 76:22–77:14, ECF No. 142); (*see also* Trial Tr. 91:5–13, ECF No. 137).  Further, the Court explicitly questioned Armada's witness as to why Armada's equipment remained on-site from March 2013 until March 2014. (Trial Tr. Eiman 80:19–22, 173:1–9, ECF No. 133).  Therefore, contrary to Armada's argument, the record supports the Court's finding that Armada was entitled to the worth of equipment costs for 188 delay days rather than the extended duration of 329 days. (Order 17:3–8).  Because there was no clerical error in the Court's conclusion, Armada's Motion with respect to Conclusion of Law No. 21 is denied.

### iii. Conclusion of Law No. 20

Armada contends that Conclusion of Law No. 20, in which the Court awarded Armada costs associated with hiring SDC to compile its claim for damages, must be corrected to reflect the Court's adjusted damage award addressed *supra*. (Mot. for Relief 9:5–10).[4]  Armada reasons that because this award category is a function of the Court's award to Armada on the underlying claim, it must be modified to account for the Court's clerical errors. (*Id.*).  However, Armada's requested correction is predicated on the Court finding a clerical error with respect to Conclusions of Law No. 21, discussed *supra*.  Because the Court finds no clerical error regarding that damage award, the Court need not amend Conclusion of Law No. 20.[5] Therefore, Armada's Motion for Relief as it pertains to Conclusion of Law No. 20 is denied.

### III.    MOTION TO AMEND JUDGMENT

### A.  Legal Standard

On a party's motion under Rule 52(b), "the court may amend its findings—or make additional findings—and may amend judgment accordingly." Fed. R. Civ. P. 52(b).  Motions pursuant to this rule cannot be used to raise arguments which could have been raised prior to the issuance of judgment. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 998 (9th Cir. 2001).

Under Rule 59(e), district courts have considerable discretion when considering a motion to amend a judgment. *Turner v. Burlington Northern Santa Fe. R.R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003).  There are four grounds upon which a Rule 59(e) motion may be granted: 1) the motion is necessary to correct manifest errors of law or fact upon which

---

[4] Armada also correctly asserts that the Court made a clerical error in its calculation of total days Armada was supposed to complete work as originally anticipated. (Mot. for Relief 8:11–15).  The Court agrees and hereby corrects Armada's expected project duration to be 165 calendar days, rather than 144 days as stated in the Court's Finding of Fact No. 19. (*See* Order 4:20–25, ECF No. 143).  However, this corrected number of expected project days does not alter the Court's award of damages in the instant Order.

[5] Armada's corrected damage award in Conclusion of Law No. 22 does not impact Armada's award for costs associated with hiring SDC.  As noted *supra*, the Court included 20% of extended field overhead costs in its award for damages incurred by Armada for its retention of SDC. (*See* Order 16:18–17:2).

judgment is based; 2) the moving party presents newly discovered evidence or previously

unavailable evidence; 3) the motion is necessary to prevent manifest injustice; or 4) there is an

intervening change in controlling law. *Id.* Motions under this Rule "should not be granted,

absent highly unusual circumstances." *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665

(9th Cir. 1995). A motion to amend judgment is not a vehicle permitting an unsuccessful party

to reiterate arguments previously presented. *Taylor v. Knapp*, 871 F.2d 803, 805 (9th Cir.

1989). Further, a "Rule 59(e) motion may *not* be used to raise arguments or present evidence

for the first time when they could reasonably have been raised earlier in the litigation." *Kona*

*Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (emphasis in original).

### B. Discussion

Armada moves the Court to "add findings of fact relating to the impacts upon Armada's

ability to perform in strict compliance with the project documents caused by Jaynes

Corporation's delays and directives during construction." (Mot. to Am. 2:7–14, ECF No. 148).

Armada asserts that while the Court accounted for the financial impacts of delays attributable to

Jaynes's acts and omissions, the Court did not account for the physical impacts of these acts

and omissions. (*Id.* 3:3–19). Jaynes counters that Armada's Motion must fail because it

impermissibly reiterates the same arguments made by Armada at trial. (Resp. 2:9–19, ECF No.

152). Jaynes further avers that Armada's Motion also consists of new arguments, theories, and

defenses that were never asserted at any time during this litigation, which is improper under

Rule 59(e). (*Id.* 2:20–25).

Armada primarily argues that the Court did not adequately address the full impact that

the re-sequencing of masonry work had on Armada's ability to pour, place, finish, and saw cut

Area B. (*Id.* 5:20–23). According to Armada, Jaynes knew Armada could not saw cut the

remaining slabs in one day and that it was "impossible to strictly comply" with the Contract

Documents in this regard. (*Id.* 6:18–22, 7:7–23). Further, Armada argues that the construction

of the masonry wall caused shadows that "prolonged the concrete curing time, particularly when the temperatures were already cold because of Jaynes' delays and work sequence changes." (*Id.* 6:11–13).

The evidence presented at trial, however, contradicts Armada's assertions. The Court heard evidence that the Area B slab-on-grade was ready to be saw cut on March 14, 2013, the same day the concrete was poured. (Trial Tr. Gervasio 240:13–241:4, ECF No. 133); (Trial Tr. Purington 129:19–130:3, 130:8–131:17, ECF No. 132). With respect to the cold temperature's impact on Armada's work on Area B, John Crampton ("Crampton"), Armada's owner and general manager, acknowledged at trial and in a letter dated May 6, 2013, that the weather was "mild and calm" on March 14, 2013, and that it played "no adverse role in the placement of the concrete." (Trial Tr. Crampton 3-64:21–65:9, ECF No. 127). This evidence belies Armada's repeated assertions that it was "physically prevented" from strictly complying with the Contract Documents with respect to the Area B slab-on-grade. (Mot. to Am. 4:22–24, 5:24–27, 6:13–16). In light of this evidence, the Court concluded that Armada was at fault for its failure to timely saw cut the Area B slab-on-grade. Therefore, there was no manifest error of law or fact in this conclusion.

Armada further argues that Finding of Fact No. 48 is inconsistent with the Contract Documents. (Mot. to Am. 6:23–7:6). In Finding of Fact No. 48, the Court stated "[i]t is not industry standard for slab-on-grade specifications to allow for cracking." (Order 9:4–5). According to Armada, the Contract Documents acknowledge that cracking is contemplated and provide a repair protocol for when concrete cracks occur. (Mot. to Am. 7:4–6). The Court, however, agrees with Jaynes that Armada's contentions are irrelevant to the Court's finding. (Resp. 16:16–19). The existence of proposed solutions to cracking in the Contract Documents is immaterial to the Court's findings with respect to industry standards.

1    Next, Armada avers that Finding of Fact No. 55 "is incomplete and not supported by the

2  evidence." (Mot. to Am. 7:24).  In this Finding of Fact, the Court stated that "[o]n June 6, 2013,

3  Armada acknowledged that at least some cracks were outside acceptable tolerances." (Order

4  10:4–5).  However, contrary to Armada's argument, this was supported by the record and the

5  Court cited to a June 6, 2013 letter written by Crampton and a portion of Crampton's testimony

6  in which he agreed there were sections of the Area B slab-on-grade that are "slightly outside"

7  acceptable tolerances. (Trial Tr. Crampton 52:22–53:5, ECF No. 127); (*see also* Ex. 310.2).

8  While Crampton's letter also acknowledges that these cracks "do not appear to be structural in

9  nature, but appear to be more surface and cosmetic," Crampton also recognized in the letter that

10 "[t]he owner may be concerned about appearance, long term durability, or structural integrity."

11 (Ex. 310.2); (Trial Tr. Crampton 53:7–15, ECF No. 127).  Therefore, the Court rejects

12 Armada's contention that this finding is unsupported by the record.

13    Relatedly, Armada argues that Finding of Fact No. 60, in which the Court stated that the

14 Corps "rejected the Area B slab-on-grade, primarily due to the cracks in the slab," is inaccurate.

15 (Mot. to Am. 8:4–5); (*see* Order 10:19–20).  According to Armada, this Finding is inaccurate

16 because the Corps letter cited by the Court "does not grade or prioritize the five (5) independent

17 reasons it rejected the Area B slab-on-grade." (Mot. to Am. 8:5–6); (*see also* Ex. 21.1–.3).

18 While Armada takes issue with the Court's finding that this was the primary reason for the

19 Corps rejection, the prioritization of reasons for the Corps rejection of the Area B slab-on-grade

20 has no impact on the Court's conclusion.  The Court found that the Corps was justified in

21 rejecting the Area B slab-on-grade for what it determined to be unacceptable cracking. (Order

22 18:14–21).  As noted *supra*, Crampton explicitly noted that the presence of cracks might deem

23 the Area B slab-on-grade unacceptable to the Corps. (Trial Tr. Crampton 53:7–15, ECF No.

24 127).  Crampton further acknowledged that the Corps had ultimate authority to reject the Area

25

B slab-on-grade for this reason. (*Id.* 53:24–54:9).  Therefore, the Court concludes that Finding of Fact No. 60 was not manifestly erroneous.

Based on the foregoing, Armada's Motion to Amend fails to articulate errors of law or fact sufficient to justify the extraordinary remedy of amending judgment. *See Kona Enters., Inc.*, 229 F.3d at 890.  Accordingly, Armada's Motion to Amend Judgment is denied.

## IV.    CONCLUSION

**IT IS HEREBY ORDERED** that Armada's Motion for Relief, (ECF No. 146), is **GRANTED in part** and **DENIED in part**.

**IT IS FURTHER ORDERED** that Conclusion of Law No. 22, (*see* Order 17:16–20, ECF No. 143), is hereby corrected to reflect the following: Armada is entitled to 10% overhead and 5% profit for added concrete placements in Area A, materials and equipment due to cold weather, cold weather and out-of-sequence work inefficiencies, and extended field overhead costs, amounting to $11,422.80 of overhead and $5,711.40 of profit.

**IT IS FURTHER ORDERED** that Finding of Fact No. 19, (*see* Order 4:24–25, ECF No. 143), is hereby corrected to include the following: According to the Project Baseline Schedule, therefore, Armada's total project duration was 165 days.

**IT IS FURTHER ORDERED** that Armada's Motion to Amend Judgment, (ECF No. 148), is **DENIED**.

**DATED** this __20__ day of June, 2018.

 

_____

Gloria M. Navarro, Chief Judge
United States District Judge